White, C. J.
This ease arises under the act of May 30, 1875, entitled “an act to provide for the improvement of streets and avenues in certain cities of the second class.” 72 Ohio L. 153.
The controversy, originated between the city and the commissioners as to what constituted the abutting property subject to assessment under the act to pay for the improvement.
On the part of the city, it was contended that in levying the assessment upon the property abutting on the improvement, the intersecting streets and alleys were to be excluded» while, on the other hand, a majority of the commissioners claimed that such streets and alleys were to be charged with the assessment in common with the abutting lots.
The act provides that the cost of the improvement shall “ be assessed equally per foot front upon the property fronting or abutting upon said improvement.” The commis *606 sioners are required to cause a plat of the avenue or street to be prepared, “ showing the separate lots of ground and the names of the several owners;” and they are also required to make “ a list or schedule of the names of all said owners and the amount assessed against each lot or piece of ground,” and the assessment is to be placed upon the duplicate of the county, and collected like other taxes.
Section 19 of the act is as follows : “ Said assessments, with interest accruing thereon, shall be a lien upon the property abutting upon said street or avenue from the commencement of the work, and shall remain a lien until fully paid; and they shall have precedence of all other liens, and shall not be divested by any judicial sale; provided, that said lien shall be limited to the lots bounding or abutting on said street or avenue, and for not exceeding in depth from said avenue 187& feet.”
It is quite apparent, from these provisions, that no property is subject to be assessed which is not also subject to be sold to pay the assessment. This fact is of itself sufficient to negative the claim of the commissioners that the public streets are subject to assessment.
The provisions of the municipal code on which counsel rely, do not apply to improvements under the act in question. ■ The act is a special one, and by its terms is only applicable where the cost of the improvement exceeds one hundred thousand dollars. The scheme provided for by the act is intended to be complete within itself.
■It is likewise claimed, on behalf of the commissioners, that, inasmuch as they have assessed the cost of the improvement on the abutting property, including the intersecting streets and alleys, that they can not be compelled by mandamus to make another assessment; that in making the assessment they exercised a discretionary power, and that their action is final.
There is no foundation for this claim. The selection of the property to be assessed is not submitted to the discretion of the commissioners. The statute prescribes the property upon which the assessment is to be levied, and, in *607 acting under the statute, the commissioners are bound to conform to its requirements.
But if, in assessing the cost of the improvement, the intersecting streets and alleys are to be excluded, it is then submitted, on behalf of the commissioners, whether the act authorizing the improvement is not in conflict with the constitution of the state.
¥e shall not undertake to examine the various-grounds on which the act is impugned. •
That the act is in conflict with section 1, article 13 of the constitution, it seems to us is plain.
The section -is as follows: “ The general assembly shall pass no special act conferring corporate powers.”
That no distinction can be made under this section between private and municipal corporations has already been decided by this court in two reported cases, and that the inhibition extends as well to the conferring of additional powers on an existing corporation as-to the creation of a new one. The State, ex rel. v. The City of Cincinnati, 20 Ohio St. 18; 23 Ohio St. 445. The general assembly is expressly disabled from conferring corporate power by special act. The mandate is that no special act shall be passed which has that effect.
It is true the act in question is in the form, in a sense, of a general law. But as was said in the ease of The State ex rel. v. The Judges, 21 Ohio St. 11, the constitutionality of an act is to be determined by its operation, and not by the mere form it may be made to assume. The act is entitled “ An act to provide for the improvement of streets and avenues in certain cities of the second class.” And by the first section it is made applicable to “ cities of the ^second class having a population of over thirty-one thousand at the last federal census.” Columbus is the only city in the state having the population named at the last federal census, and the act, therefore, applies alone to that city, and never can apply to any other. The effect of the act would have been precisely the same if the city had *608 been designated by name instead of by the circumlocution employed.
That the act undertakes to confer corporate power upon the city can not be doubted; for while the property owners are required to be promoters of the improvement, the authority to- direct it to be made is vested in the city council, and the bonds of the city are to be used to raise money to pay for it.
The constitution, as has been repeatedly held, does not inhibit appropriate local or special legislation. Crickett v. The State, 18 Ohio St. 9; The State ex rel. v. The Judges, 21 Ohio St. 1; The State ex rel. v. Covington et al., 29 Ohio St. 102. The constitutional inhibition is against granting corporate power by such legislation.
The question under consideration was not made or considered in Welker v. Potter, 18 Ohio St. 85. That case was a suit to collect an assessment made under the act of April 5, 1866 (68 Ohio L. 133). The court below decided the assessment to be invalid. The case came before this court on an application for leave to file a petition in error, and was disposed of by a per curiam.
The assessment was sought to be sustained under the act of February 21, 1866 (63 Ohio L. 22), on the ground that the subsequent act of April 5th, was unconstitutional.
The only constitutional objection suggested against the act was that it was in conflict with section 26, article 2 of the constitution, which requires all laws of a general nature to have a uniform operation throughout the state. The objection was overruled, and the exact point decided is found in the last proposition of the syllabus.
The act in that case, like the one now before us, was clearly of a local or special nature, and was not subject to' the constitutional objection made against it.
The fact that the act conferred corporate power, and was thus in conflict with section 1, article 13, was not suggested in argument or considered by the court. That case is, therefore, not to be considered as authority on any question involving the grant of corporate power.
*609 The remaining question is, whether the uneonstitutionality of the act constitutes an answer to the alternative writ.
Under the. circumstances of the case, we think it does not.
The making of the improvement originated with the owners of the abutting property and was carried forward to completion under their authority.
The first section of the act provides, that the owners of property abutting on the street are authorized to elect five citizens of the city, who are likewise to be owners of abutting property, whose duty it is declared to be to control and superintend the grading, curbing and paving of the-street, and who are to serve without salary.
The third section provides, that each owner of property shall be entitled to one vote for every foot front of property abutting on the street. It also prescribes the mode in-which the election is to be conducted, and requires a list of the persons voting to be preserved. Section 24 provides, that the city council shall not have the right to authorize any improvement under the act, unless the owners of two-thirds of the feet front of the property abutting on the street to be improved shall petition the city council for the privileges of the act.
In the ordinance passed by the city council authorizing the improvement to be made, it is expressly found that the owners of the requisite two-thirds of the feet front of the abutting property had petitioned for the privileges of the act.
It is true that the majority of the commissioners in their answer say “ that as they are now advised and believe they deny that the owners of two-thirds ” of the frontage petitioned for the privileges of the act. But this denial, as we understand it, is founded on the assumption that the intersecting streets and alleys are to be considered as abutting property. As this assumption is founded upon an erroneous view of the statute, the denial goes for nothing.
"We deem it unnecessary to undertake- to. recite all the *610 steps that have been taken in making the improvement. It is sufficient to say that the defendants and the other abutting lot-owners who have co-operated with them, have caused the improvement to be completed. In doing the •work alarge indebtedness has been incurred,'for which the bonds of the city have been issued and negotiated in accordance with the provisions of the act. All this has been done with full knowledge that the only provision made for paying such indebtedness was by assessment on the abutting property.
Under, these circumstances, we are of opinion that the defendants and those who have participated with them in causing the improvement to be made, are estopped from denying the validity of the assessment. Having voluntarily availed themselves of the provisions of the act, to create an indebtedness for the benefit of their property, good faith requires that-they .should be thus estopped.
The principles of estoppel apply where the proceedings are questioned on the ground of the unconstitutionality of the statute under which they are had, as well as where they are sought to be impeached on other grounds. Ferguson et al. v. Landrum et al., 1 Bush, 548; Ferguson v. Landrum, 5 Bush, 230.
Hence, notwithstanding the unconstitutionality of the act, the rights of third parties have so intervened that it is the duty of the commissioners to complete the apportionment of the assessment in accordance with the terms of the act.
The action.of the commissioners in levying the assessment will not .conclude the lot-owners from contesting their liability. If there are any who are not estopped by their conduct, they can make their defense when the assessment is sought to be enforced against them.

Peremptory writ aioarded.

This case was decided before- Judge "Welch retired from the bench. .