Shatjck, O. J.
Counsel for the plaintiff insist that the act is void because repugnant to the 13th article of the constitution of the state, and particularly to the first section of that article: “The general assembly shall pass no special act conferring corporate power;” and to the sixth section: “The general assembly shall provide for the organization of cities and incorporated Tillages by general laws.” That the inhibition of the *161 first section applies to municipal as well as to private corporations seems clear from its comprehensive terms. That it does so apply has not, so far as we know, been doubted since it was so decided in State ex rel. Attorney General v. City of Cincinnati, 20 Ohio St., 18. The act confers upon the city the corporate power of taxation, and it is insisted that the argument against its validity is completed by the proposition that it is necessarily special because it applies to no municipality except Cincinnati.
It would seem that an answer to this argument must be found, if anywhere, in the authority of the former decisions of this court. Those decisions are cited by counsel upon either side, it being contended for the plaintiff that the rules of interpretation defined in numerous cases compel the conclusion that the act is void. However that may be, it is true that the act does not designate Cincinnati by name but describes'it by grade and class; and that although the operation of the act is as effectually restricted to Cincinnati as though it were named, in all the decisions of this court relating to the precise subject that classification has been sustained, i The reports of the- court show that with respect to this subject- the maxim stare clecisis and the reasons for adhering to former decisions have been urged with frequency and earnestness. It does not seem to be doubted that they have received from the court all the consideration to which they are entitled. The maxim is founded upon reason, and it should not be so applied as to banish reason from the law. It must apply to different cases with varying degrees of force according to the reasons for its application. Its effect should be conclusive when former decisions have recognized and defined rules *162 of interpretation with reference to which parties have entered into contractual relations. That effect of the maxim is required by a conservative regard for the repose of society. Such apx>lications of the maxim are encouraged by the consideration that however clearly it may appear to the court that former decisions should not have been made, their operation must be regarded as at least tolerable until the rules which they define are changed by the legislature by laws operating x>rospectively and disturbing no vested right. The maxim would seem to be entitled to the least possible force when invoked to support enactments passed by the legislature in disregard of the boundaries which the constitution has fixed to its power, and where no real or supposed interests have become vested. If the original act of classification by which two classes of cities were created, with but one city in a class, was void because the constitution contains an exclusive classification of municipalities as “cities” and “incorporated villages,” the point, if noticed, was not commented upon. If it was an error to disregard the actual operation of acts conferring corporate power upon a single city by such classification, and to rely upon the hope that the future might give to such acts a wider operation, the error was at least extenuated by the consideration, made prominent in the decisions, that the legislature intended to respect the constitution and that the classification was to be permanent so that in the development of the state other cities might enter the classes then created. Unless judges are absolved from the use of reason, a conclusion resting upon that consideration would not be entertained now if it has been made clear that no classification is permitted to be permanent; that by increasing the number of classes and dividing the *163 classes into grades what is called classification is employed for the isolation of every city in the state, and that acts Avhose operation is limited and defined by such classification confer corporate poAver in palpable violation of the constitution.
There is, however, one decision Avhicli seems to be entitled to conclusive effect in support of the judgment of the circuit court. In Walker v. Cincinnati, 21 Ohio St., 14, it Avas decided that the act of May 4, 1869, entitled “an act relating to cities of the first class,” etc., commonly knoAvn as the Cincinnati RailAvay act, was valid. The act before us is supplementary to that Avhose validity was there affirmed. Counsel for the plaintiff are aAvare of the familiar rule that supplementary acts are, in their interpretation, subject to the same rules as those which they supplement, to the end that the entire body of legislation so related may operate harmoniously. Nor do we understand them to deny that this rule embraces all constitutional questions which may have been involved in the original act. But, AAthile admitting that the present act is in form supplementary to that, they insist that it is not so in the substance of its provisions. This position does not appear to be well chosen. It resulted from the decision in Walker v. Cincinnati, that a condition arose in that city which is not found in any other city of the state. In the exercise of authority which, according to the judgment in that case, the original act conferred upon the city, municipal bonds in large amounts were issued. They were purchased in reliance upon the judgment in that case. The money realized from their sale was expended in the construction of the railway. The city through trustees is now engaged in operating the railway and caring for the debt so created. The *164 peculiar condition thus arising in Cincinnati is the precise subject of the legislation whose validity is now denied. It would be intolerable if a change in the judges composing a court should result in setting aside judgments believed to have been erroneously rendered. The case is not within the usual application of the maxim stare decisis, but within the rules which require stability of judgments. Judgments may not be set aside after term merely because they are believed to have been erroneously rendered, though it is not required that like judgments be thereafter rendered in similar cases. The judges who decided Walker v. Cincinnati, could not with propriety have set aside their judgment when they became satisfied that it had been erroneously rendered, the supposed authority having in the meantime been exercised. It may. be that the most obvious reasons for holding the original act void were not presented by counsel nor considered by the court in that case. Indeed the concluding sentence of the opinion seems to intimate that they were not. However, that may bej the failure to consider such reasons could not affect the case otherwise than to impair its authority when presented in support of the validity of independent legislation of a like character. That failure does not at all detract from the conclusiveness of the judgment then rendered, which was, in effect, that this legislation is valid.
It may aid to prevent improper inferences if it is added that it is not intended by any of these observations to intimate the. opinion that Walker v. Cincinnati was correctly decided nor that the maxim stare decisis would require the same judgment with respect to independent legislation of like character.

Judgment affirmed.